UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS

In re                                                    Case No. 19-10061-JNF

Bradley J. Bartlett                                      Chapter 13
Deborah L. Bartlett
                        Debtors

EXPEDITED MOTION FOR LEAVE TO SELL 1 LONG SWAMP ROAD, BOURNE, MA
02532 FREE AND CLEAR OF ALL LIENS, CLAIMS, AND ENCUMBRANCES

    The Debtor in the above-entitled matter moves this Honorable Court for leave to sell the

home at 1 Long Swamp Road, Bourne, MA 02532 ("Real Property").  In support of this motion,

the Debtor states as follows

1.  This case was commenced on January 8, 2019 by filing a Voluntary Petition for Relief under

    Chapter 13 of the United States Bankruptcy Code.

2.  The Debtors would like to sell the Real Property.  They own the property as tenants by the

    entirety.

3.  The Debtor has a buyer for said property and entered a Purchase and Sale Agreement.  *See*

    Exhibit A.

4.  Pursuant to the Purchase and Sale Agreement, the Debtors have agreed, subject to the

    approval of the Bankruptcy Court, to sell the Property to Alex and Laura Russo (the

    "Purchaser") for a total purchase price of $360,000.00. As set forth in the Agreement, the

    Purchaser paid a $1,000.00 deposit with the contract to purchase and $5,000.00 with the

    Purchase and Sale agreement.  The balance of the Purchase Price will be paid upon the

    closing of the Sale.  The Debtor will sell the Property with quitclaim covenants.

5.  The Parties have tentatively scheduled the closing for April 23, 2019 at noon.

6.  Proceeds shall be distributed as follows:

    A.   Pay the first mortgage lien in full;

    B.   Pay the second mortgage $9,272.52 with consent.  This is a "short sale" and TD

        Bank, the second lienholder, consents to the sale and agrees to accept $9,272.52 in

        proceeds in order to release its lien.  *See* Exhibit B.

    C.   Normal closing costs;

7.  The Property shall be sold free and clear of all claims, liabilities, equities, exceptions, contracts, options, obligations, encumbrances, charges, rights of third parties (express or implied), restrictions, mortgages, security interests, and other liens or liabilities of any nature.  Any perfected, enforceable, valid liens shall attach to the balance of the proceeds of the sale, after deducting the payment for any closing costs as set forth in the Agreement, in accordance with the priorities established under applicable law.

8.  The Debtors believes that the purchase price is fair and reasonable, and that the Property is not likely to attract an offer higher than the Purchase Price at this time.  The proposed private sale is in the estate's best interest because the Debtors obtained a fair and reasonable price for the Property and has avoided the additional cost of conducting a public sale.

9.  The Debtors made a good faith effort to market the property and believes this offer represents the highest price they would be able to receive.

10.  The Debtors request this Court's approval of the proposed Notice of Intended Private Sale of Estate Property, Deadline for Submitting Objections and Higher Offers and Hearing Date (the "Notice") attached as "Exhibit C."

11.  Upon approval of the Court, the Debtors shall serve the Notice (as supplemented by this Court) on all creditors, parties in interest, including the United States Trustee, parties who

have filed appearances and requested service of all pleadings and notices, and parties

regarded by the Seller as potential purchasers.

12. The Debtors request expedited treatment for this motion.  The parties have scheduled the

closing to occur on April 23, 2019.  No creditor will be harmed by expedited treatment.  The

mortgage held by Shellpoint will be paid in full.  TD Bank holds the second mortgage and

consents to a short sale and receiving $9,272.52.  Short sale approval expires on June 3,

2019.

13. Finally, the Debtors request that this court waive the 14-day stay of the order authorizing the

sale imposed by Fed. R. Bankr. 6004(h).  Under 11 U.S.C. 363(m), the court should waive

the 14-day appeal period because the buyers at all times acted in good faith, agreed to pay fair

market value for the property and negotiated the sale at arm's length.  The buyers did not

collude or take unfair advantage of the process and is not an insider or an affiliate of the

Debtor.

WHEREFORE, the Debtors respectfully requests that the Court enter an Order:

1.  Allowing expedited treatment of the motion;

2.  Approving the Notice of Intended Private Sale and manner of service as set forth above;

3.  Directing that the Property be sold free and clear of all claims, liabilities, equities, exceptions,

contracts, options, obligations, encumbrances, charges, rights of third parties (express or

implied), restrictions, mortgages,  security interests, and other liens, and that any perfected,

enforceable valid liens shall attach to the balance of the proceeds of the sale , after deducting

the payment for any closing costs as set forth in the Agreement, in accordance with the

priorities established under applicable law;

4.  Authorizing the Debtors to utilize the proceeds of the Sale, to the extent necessary, to pay closing costs associated with the Sale as set forth in the Agreement;

5.  Authorizing and empowering the Debtors to take such further actions as are necessary, appropriate, or desirable to consummate the transactions provided for, or contemplated in, the Agreement;

6.  Finding the buyer is a good faith buyer under 11 U.S.C. 363(m) and waiving the 14-day stay of the order allowing sale in Fed. R. Bankr. P 6004(h);

7.  Ordering the Debtor to provide the closing statement to the Chapter 13 Trustee; and

8.  Granting such other relief as the Court deems just and proper.

Respectfully submitted,
Through counsel,

Dated:  April 8, 2019

_/s/ Thomas C. Benner_
Thomas C. Benner, Esq.
Benner & Weinkauf, P.C.
33 Samoset Street
Plymouth, MA  02360
(508) 746-8030
BBO# 655483
tbenner@tbennerlaw.com

# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MASSACHUSETTS

In re                                              Case No. 19-10061-JNF

Bradley J. Bartlett                                Chapter 13
Deborah L. Bartlett

            Debtors

### NOTICE OF INTENDED PRIVATE SALE OF PROPERTY, SOLICITATION OF COUNTEROFFERS, DEADLINE FOR SUBMITTING OBJECTIONS AND HIGHER BIDS AND HEARING DATE

   2/14/2019    **IS THE DATE OF THE PROPOSED SALE**

_____    **IS THE DATE BY WHICH OBJECTIONS OR COUNTERFFERS MUST BE MADE**

**NOTICE IS HEREBY GIVEN,** pursuant to 11 U.S.C. § 363, Fed. R. Bankr. P. 2002(a)(2) and 6004, and MLBR 2002-5 and 6004-1, that the Debtor intends to sell at private sale, the debtor's right, title and interest in certain property of the estate.

**PROPERTY TO BE SOLD:** 1 Long Swamp Road, Bourne, MA

**THE OFFER:**  The Debtor has received an offer to purchase the property for the sum of $360,000.00.

**THE PROPOSED BUYER:**  The proposed buyer is Alex Russo and Laura Russo.  The relationship of the proposed buyers to the Debtor is:  **None**.

**THE SALE DATE:**  The sale shall take place on or before _April 23, 2019_.  The  proposed  buyers  paid  a deposit in the sum of $___1,000.00___ with the Contract to Purchase and $4,000.00 with the Purchase and Sale Agreement.  The terms of the proposed sale are more particularly described in a Motion for Order Authorizing and Approving Private Sale of Property of the Estate (the "Motion to Approve Sale") filed with the Court on _____April 8, 2019_ and a written Purchase and Sale Agreement dated_ March 11, 2019_.  The Motion to Approve Sale and the Purchase and Sale agreement are available at no charge upon request from the undersigned.

**SALE FREE AND CLEAR OF LIENS:**  The property at _1 Long Swamp Road, Bourne, MA 02532_ will be sold free and clear of all liens, claims and encumbrances.  Any perfected, enforceable valid lies shall attach to the proceeds of the sale according to priorities established under applicable law.

**COUNTEROFFERS OR OBJECTIONS:**  Any objections to the sale and/or higher offers must be filed in writing with the Clerk, United States Bankruptcy Court at _J.W. McCormack Post Office & Court House, 5 Post Office Square, Clerk's Office, Boston, MA 02109_ on or before _____ at 4:30 PM (the "Objection Deadline"). A copy of any objection or higher offer also shall be served upon the undersigned.  Any objection to the sale must state with particularity the grounds for the objection and why the intended sale should not be authorized.  Any objection to the sale shall be governed by Fed. R. Bankr. P. 9014.

**EXHIBIT C**



MASSACHUSETTS ASSOCIATION of REALTORS

## STANDARD RESIDENTIAL PURCHASE AND SALE AGREEMENT *[#503]*
### *(With Contingencies)*

The parties make this Agreement this ___**11th**___ day of ___**March**___, ___**2019**___. This Agreement supersedes and replaces all obligations made in any prior Contract To Purchase or agreement for sale entered into by the parties.

### 1. **Parties:**

**Bradley S Bartlett, Deborah L Bartlett**

the "SELLER," agrees to sell and **Alex Russo, Laura Russo** _____ *[insert name]*, the "BUYER," agrees to buy, the premises described in paragraph 2 on the terms set forth below. BUYER may require the conveyance to be made to another person or entity ("Nominee") upon notification in writing to SELLER at least five business days prior to the date for performance set forth in paragraph 5. Designation of a Nominee shall not discharge the BUYER from any obligation under this Agreement and BUYER hereby agrees to guarantee performance by the Nominee.

### 2. **Description Of Premises.** The premises (the "Premises") consist of:

(a) the land with any and all buildings thereon known as **1 Long Swamp Road**

**Bourne, MA 02532**

recorded in the ___**Barnstable County**___ Registry of Deeds at Book ___, as more specifically described in a deed No. ___], a copy of which [ ] is [X] is not *[choose one]* attached; and ___**15484**___, Page ___**346**___, [Certificate

(b) all structures, and improvements on the land and the fixtures, including, but not limited to: any and all storm windows and doors, screens, screen doors, awnings, shutters, window shades and blinds, curtain rods, furnaces, heaters, heating equipment, oil and gas burners and fixtures, hot water heaters, plumbing and bathroom fixtures, towel racks, built-in dishwashers, garbage disposals and trash compactors, stoves, ranges, chandeliers, electric and other lighting fixtures, burglar and fire alarm systems, mantelpieces, wall-to-wall carpets, stair carpets, exterior television antennas and satellite dishes, fences, gates, landscaping including trees, shrubs, flowers; and the following built-in components, if any: air conditioners, vacuums systems, cabinets, shelves, bookcases and stereo speakers, and _____

but excluding **range** _____.

*[insert references to refrigerators, dishwashers, microwave ovens, washing machines, dryers or other items, where appropriate]*

### 3. **Purchase Price:** The purchase price for the Premises is **$360,000.00**

$ ___**1,000.00**___ were paid as a deposit with Contract To Purchase; and _____ dollars of which

$ ___**5,000.00**___ are paid with this Agreement;

$ _____ are to be paid

$ ___**354,000.00**___ are to be paid at the time for performance by bank's, cashier's, treasurer's or certified check or by wire transfer.

$ ___**360,000.00**___ Total

### 4. **Escrow.** All funds deposited or paid by the BUYER shall be held in a non-interest bearing escrow account, by

_____**Northeast Properties LLC**_____, as escrow agent, subject to the terms of this Agreement and shall be paid or otherwise duly accounted for at the time for performance. If a

| *AR* | *LR* | *BSB* | *DLB* | |
|---|---|---|---|---|
| BUYER'S Initials | BUYER'S Initials | BUYER'S Initials | SELLER'S Initials | SELLER'S Initials | SELLER'S Initials |

**MASSFORMS™**
Statewide Standard Real Estate Forms

©1999, 2000, 2002, 2006, 2007, 2008, 2010, 2012 MASSACHUSETTS ASSOCIATION OF REALTORS®

Northeast Properties, 11 Robert Toner Blvd 5-111 North Attleboro MA 02763
Northeast Properties

Produced with zipForm® by zipLogix  18070 Fifteen Mile Road, Fraser, Michigan 48026  www.zipLogix.com

Phone: 9784231831    Fax: 8883806642

Form No. 503

1 Long Swamp Rd.

**EXHIBIT A**

Scanned by CamScanner

dispute arises between the BUYER and SELLER concerning to whom escrowed funds should be paid, the escrow agent shall ~~may~~ retain all escrowed funds pending written instructions mutually given by the BUYER and the SELLER. The escrow agent shall abide by any Court decision concerning to whom the funds shall be paid and shall not be made a party to a lawsuit solely as a result of holding escrowed funds. Should the escrow agent be made a party in violation of this paragraph, the escrow agent shall be dismissed and the party asserting a claim against the escrow agent shall pay the agent's reasonable attorneys' fees and costs. *[If interest is to accrue on escrowed funds, indicate to whom it shall be paid.]*

5. **Time For Performance.** The SELLER shall deliver the deed and the BUYER shall pay the balance of the purchase price at __12:00__ o'clock __p__. m. on the _____23rd_____ day of _____April_____, __2019__, at the _____Barnstable County_____ Registry of Deeds, or at such other time and place as is mutually agreed in writing. TIME IS OF THE ESSENCE AS TO EACH PROVISION OF THIS AGREEMENT. Unless the deed and other documents required by this Agreement are recorded at the time for performance, all documents and funds are to be held in escrow, pending prompt rundown of the title and recording (or registration in the case of registered land). SELLER'S attorney or other escrow agent shall disburse funds the next business day following the date for performance, provided that the recording attorney has not reported a problem outside the recording attorney's control.

6. **Title/Plans.** The SELLER shall convey the Premises by a good and sufficient quitclaim deed running to the BUYER or to the BUYER'S nominee, conveying good and clear record and marketable title to the Premises, free from liens and encumbrances, except:

(a) Real estate taxes assessed on the Premises which are not yet due and payable;

(b) Betterment assessments, if any, which are not a recorded lien on the date of this Agreement;

(c) Federal, state and local laws, ordinances, bylaws, rules and regulations regulating use of land, including building codes, zoning bylaws, health and environmental laws;

(d) Rights and obligations in party walls;

(e) Any easement, restriction or agreement of record presently in force which does not interfere with the reasonable use of the Premises as now used;

(f) Utility easements in the adjoining ways;

(g) Matters that would be disclosed by an accurate survey of the Premises; and

(h) _____

*[insert in (h) references to any other easement, restriction, lease or encumbrance which may continue after title is transferred]*

If the deed refers to a plan needed to be recorded with it, at the time for performance the SELLER shall deliver the plan with the deed in proper form for recording or registration.

7. **Title Insurance.** BUYER'S obligations are contingent upon the availability (at normal premium rates) of an owner's title insurance policy insuring BUYER'S title to the premises without exceptions other than the standard exclusions from coverage printed in the current American Land Title Association ("ALTA") policy cover, the standard printed exceptions contained in the ALTA form currently in use for survey matters and real estate taxes (which shall only except real estate taxes not yet due and payable) and those exceptions permitted by paragraph 6 of this Agreement.

8. **Closing Certifications and Documents.** The SELLER shall execute and deliver simultaneously with the delivery of the deed such certifications and documents as may customarily and reasonably be required by the BUYER'S attorney,

2

| _AR_ | _PR_ | _____ | _BSB_ | _DLB_ | _____ |
|------|------|----------|-------|-------|----------|
| BUYER'S Initials | BUYER'S Initials | BUYER'S Initials | SELLER'S Initials | SELLER'S Initials | SELLER'S Initials |

**MASSFORMS™**
Statewide Standard Real Estate Forms

©1999, 2000, 2002, 2006, 2007, 2008, 2010, 2012 MASSACHUSETTS ASSOCIATION OF REALTORS®



Form No. 503

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026  www.zipLogix.com                    1 Long Swamp

BUYER'S lender, BUYER'S lender's attorney or any title insurance company insuring the BUYER'S title to the Premises, including, without limitation, certifications and documents relating to: (a) parties in possession of the premises; (b) the creation of mechanics' or materialmen's liens; (c) the Settlement Statement and other financial affidavits and agreements as may reasonably be required by the lender or lender's attorney; (d) the citizenship and residency of SELLER as required by law; and (l) information required to permit the closing agent to report the transaction to the Internal Revenue Service. At the time of delivery of the deed, the SELLER may use monies from the purchase to clear the title, provided that all documents related thereto are recorded with the deed or within a reasonable time thereafter acceptable to the BUYER and, provided further, that discharges of mortgages from banks, credit unions, insurance companies and other institutional lenders may be recorded within a reasonable time after recording of the deed in accordance with usual conveyancing practices. The SELLER'S spouse hereby agrees to release all statutory, common law or other rights or interest in the Premises and to execute the deed, if necessary.

9.    **Possession And Condition Of Premises**.  At the time for performance the SELLER shall give the BUYER possession of the entire Premises, free of all occupants and tenants and of all personal property, except property included in the sale or tenants permitted to remain. At the time for performance the Premises also shall comply with the requirements of paragraph 6, and be broom clean and in the same condition as the Premises now are, reasonable wear and tear excepted, with the SELLER to have performed all maintenance customarily undertaken by the SELLER between the date of this Agreement and the time for performance, and there shall be no outstanding notices of violation of any building, zoning, health or environmental law, bylaw, code or regulation, except as agreed. The BUYER shall have the right to enter the Premises within forty-eight (48) hours prior to the time for performance or such other time as may be agreed and upon reasonable notice to SELLER for the purpose of determining compliance with this paragraph. At the time of recording of the deed, or as otherwise agreed, the SELLER shall deliver to BUYER all keys to the Premises, garage door openers and any security codes. Until delivery of the deed, the SELLER shall maintain fire and extended coverage insurance on the Premises in the same amount as currently insured.

10.   **Extension Of Time For Performance**.  If the SELLER cannot convey title as required by this Agreement or cannot deliver possession of the Premises as agreed, or if at the time of the delivery of the deed the Premises do not conform with the requirements set forth in this Agreement or the BUYER is unable to obtain title insurance in accordance with paragraph 7, upon written notice given no later than the time for performance from either party to the other, the time for performance shall be automatically extended for thirty (30) days, except that if BUYER'S mortgage commitment expires or the terms will materially and adversely change in fewer than thirty (30) days, the time for performance set forth in paragraph 5 shall be extended to one business day before expiration of the mortgage commitment. SELLER shall use reasonable efforts to make title conform or to deliver possession as agreed, or to make the Premises conform to the requirements of this Agreement. Excluding discharge of mortgages and liens, about which the SELLER has actual knowledge at the time of signing this Agreement, the SELLER shall not be required to incur costs or expenses totaling in excess of one-half (1/2) of one percent of the purchase price to make the title or the Premises conform or deliver possession as agreed. If at the expiration of the time for performance, or if there has been an extension, at the expiration of the time for performance as extended, the SELLER, despite reasonable efforts, cannot make the title or Premises conform, as agreed, or cannot deliver possession, as agreed, or if during the period of this Agreement or any extension thereof, the SELLER has been unable to use proceeds from an insurance claim, if any, to make the Premises conform, then, at the BUYER'S election, any payments

3

| _AR_ | _PR_ | | _BSB_ | _DLB_ | |
|---|---|---|---|---|---|
| BUYER'S Initials | BUYER'S Initials | BUYER'S Initials | SELLER'S Initials | SELLER'S Initials | SELLER'S Initials |

**MassForms**™
Statewide Standard Real Estate Forms          ©1999, 2000, 2002, 2006, 2007, 2008, 2010, 2012 MASSACHUSETTS ASSOCIATION OF REALTORS®



Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026  www.zipLogix.com

Form No. 503

1 Long Swamp

Scanned by CamScanner

made by the BUYER pursuant to this Agreement shall be immediately returned. Upon return of all such funds, all obligations of the BUYER and SELLER shall terminate and this Agreement shall automatically become void and neither the BUYER nor SELLER shall have further recourse or remedy against the other.

11. **Nonconformance Of Premises.** If the Premises do not conform to the requirements of paragraph 9 because they have been damaged by fire or other casualty (occurring after the date of this Agreement) that is covered by insurance, then the BUYER shall have the right to elect whether or not to proceed to accept the Premises and take title. If BUYER elects to proceed BUYER shall have the right to elect to have the SELLER pay or assign to the BUYER, at the time for performance, the proceeds recoverable on account of such insurance, less any cost reasonably incurred by the SELLER for any incomplete repairs or restoration. If the SELLER, despite reasonable efforts, has neither been able to restore the Premises to its former condition nor to pay or assign to the BUYER the appropriate portion of insurance proceeds, the BUYER shall have the right to elect to have the SELLER give the BUYER a credit toward the purchase price, for the appropriate amount of insurance proceeds recoverable less any costs reasonably incurred by the SELLER for any incomplete restoration.

12. **Acceptance Of Deed.** The BUYER shall have the right to accept such title to the Premises as the SELLER can deliver at the time for performance and if extended, shall have such right at the time for performance, as extended. The BUYER shall also have the right to accept the Premises in the then current condition and to pay the purchase price without reduction of price. Upon notice in writing of BUYER'S decision to accept the Premises and title, the SELLER shall convey title and deliver possession. Acceptance of a deed by the BUYER or BUYER'S nominee, if any, shall constitute full performance by the SELLER and shall be deemed to release and discharge the SELLER from every duty and obligation set forth in this Agreement, except any duty or obligation of the SELLER that the SELLER has agreed to perform after the time for performance. Notwithstanding the foregoing, the warranties, if any, made by the SELLER shall survive delivery of the deed.

13. **Adjustments.** At the time for performance of this Agreement adjustments shall be made as of the date of performance for current real estate taxes, fuel value, water rates, sewer use charges, collected rents, uncollected rents (if and when collected by either party), security deposits, prepaid premiums on insurance if assigned. The net total of such adjustments shall be added to or deducted from the purchase price payable by the BUYER at the time for performance. If the real estate tax rate or assessment has not been established at the time for performance, apportionment of real estate taxes shall be made on the basis of the tax for the most recent tax year with either party having the right to request apportionment from the other within twelve months of the date that the amount of the current year's tax is established. *[If tenants will continue to occupy the Premises, use of the Rental Property Addendum to Purchase And Sale Agreement should be considered.]*

14. **Acknowledgment Of Fee Due Broker.** The SELLER and BUYER acknowledge that a fee of <u>see paragraph</u> <u>23 additional provisions</u> ( _____ ) for professional services shall be paid by the SELLER to <u>Northeast Properties</u>, the "BROKER", at the time for performance. In the event of a conflict between the terms of this Agreement and a prior fee agreement with BROKER, the terms of the prior fee agreement shall control unless BROKER has expressly agreed to a change in writing. The BUYER and SELLER acknowledge receipt of a notice from BROKER, pursuant to 254 of the Code of Massachusetts Regulations Section 3.0 (13), regarding any agency

4

| *AR* | *PR* | | *BSB* | *DLB* | |
|---|---|---|---|---|---|
| BUYER'S Initials | BUYER'S Initials | BUYER'S Initials | SELLER'S Initials | SELLER'S Initials | SELLER'S Initials |

**MASSFORMS™**
Statewide Standard Real Estate Forms    ©1999, 2000, 2002, 2006, 2007, 2008, 2010, 2012 MASSACHUSETTS ASSOCIATION OF REALTORS®



Form No. 503

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026  www.zipLogix.com    1 Long Swamp

Scanned by CamScanner

relationship of the BROKER with the BUYER and/or the SELLER. The BUYER and SELLER understand that
_____ [insert name], a real estate broker, is seeking a fee from
          **Esquire Real Estate**
          **Northeast Properties** _____ [name of listing broker, seller or buyer, if applicable] for
services rendered as a ▢ seller's subagent ▢X buyer's agent ▢ facilitator (non-agent) [choose one]. The BUYER further
represents and warrants that there is no other broker with whom BUYER has dealt in connection with the purchase of the
Premises.

15. **Buyer's Default.** If the BUYER or BUYER'S Nominee breaches this Agreement, all escrowed funds paid or deposited
by the BUYER shall be paid to the SELLER as liquidated damages. Receipt of such payment shall constitute the
SELLER'S sole remedy, at law, in equity or otherwise, for BUYER'S default. The BUYER and SELLER agree that in the
event of default by the BUYER the amount of damages suffered by the SELLER will not be easy to ascertain with
certainty and, therefore, BUYER and SELLER agree that the amount of the BUYER'S deposit represents a reasonable
estimate of the damages likely to be suffered.

16. **Buyer's Financing.** *(Delete If Waived)* The BUYER'S obligation to purchase is conditioned upon obtaining a written
commitment for mortgage financing in the amount of $340,000.00 _____ at prevailing rates, terms and
conditions by _____ **April 12, 2019** _____. The BUYER shall have an obligation to act reasonably and
diligently to satisfy any condition within BUYER'S control. If, despite such diligent efforts, the BUYER has been unable
to obtain such written commitment, the BUYER may terminate this Agreement by giving written notice that is received by
SELLER or SELLER'S agent by 5:00 p.m. on the calendar day after the date set forth above. In the event that notice has
not been actually or constructively received, this condition is deemed waived. In the event that due notice has been
received, all monies deposited or paid by the BUYER shall be returned and all obligations of the BUYER and SELLER
pursuant to this Agreement shall cease and this Agreement shall become void. In no event shall the BUYER be deemed to
have used reasonable efforts to obtain financing unless the BUYER has submitted at least one (1) application to a
licensed mortgage lender by _____ **March 15, 2019** _____ and acted reasonably promptly in providing
any additional information requested by the mortgage lender.

17. **Inspections/Survey.** *(Delete if Waived)* The BUYER has had an opportunity to conduct all inspections and accepts
the condition of the property as is, ~~subject to any work expressly agreed in writing to be performed at the expense of~~
~~SELLER. Notwithstanding the foregoing, the BUYER has~~ _____ ~~days from the date of this Agreement to~~
~~complete inspection of~~ _____ ~~by consultant(s) regularly in the~~
~~business of conducting said inspections, of BUYER'S own choosing, and at BUYER'S sole cost. If the results are not~~
~~satisfactory to BUYER, in BUYER'S sole discretion, BUYER shall have the right to give written notice received by the~~
~~SELLER or SELLER'S agent by 5:00 p.m. on the calendar day after the date set forth above, terminating this Agreement.~~
~~Upon receipt of such notice this Agreement shall be void and all monies deposited by the BUYER shall be returned.~~
~~Failure to provide timely notice of termination shall constitute a waiver. In the event that the BUYER does not exercise the~~
~~right to have such inspection(s) or to so terminate, the SELLER and the listing broker are each released from claims~~
~~relating to the condition of the Premises that the BUYER or the BUYER'S consultants could reasonably have discovered.~~

18. **Lead Paint Laws.** For premises built before 1978 BUYER acknowledges receipt of the "Department of Public Health
Property Transfer Notification" regarding the Lead Law, acknowledges verbal notification of the possible presence of lead
hazards and the provisions of the Federal and Massachusetts Lead Laws and regulations, including the right to inspect for
dangerous levels of lead. Occupancy of premises containing dangerous levels of lead by a child under six years of age is
prohibited, subjected to exceptions permitted by law. BUYER further acknowledges that neither the SELLER nor any real
estate agent has made any representation, express or implied, regarding the absence of lead paint or compliance with

5

| *AK* | *PR* | _____ | *BSB* | *DLB* | _____ |
| BUYER'S Initials | BUYER'S Initials | BUYER'S Initials | SELLER'S Initials | SELLER'S Initials | SELLER'S Initials |

**MassForms™**
Statewide Standard Real Estate Forms    ©1999, 2000, 2002, 2006, 2007, 2008, 2010, 2012 MASSACHUSETTS ASSOCIATION OF REALTORS®

Form No. 503

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026  www.zipLogix.com    1 Long Swamp

Scanned by CamScanner

any lead law, except as set forth in writing. BUYER assumes full responsibility for compliance with all laws relating to lead paint removal, if required by law, and related matters (in particular, without limitation, Mass. G.L., c. 111, § 197), and BUYER assumes full responsibility for all tests, lead paint removal and other costs of compliance. Pursuant to 40 CMR 745.113(a), the Property Transfer Notification Certification is <u>attached</u> to this agreement.

19. **Certificate of Approved Installation.** The ~~SELLER~~ shall equip the residential structure on the Premises with approved smoke detectors and carbon monoxide detectors and furnish BUYER with Certificate of Approved Installation from the local Fire Department at the time for performance to the extent required by law as well as any wood stove permit, if any, required by law, regulation or ordinance.

20. **Warranties And Representations.** The SELLER represents and warrants that the Premises [X] is/ [ ] is not *[choose one]* served by a septic system or cesspool. [If yes, a copy of the Title 5 Addendum is attached.] The SELLER further represents that there [ ] is an/ [ ] is not or [X] has no knowledge of *[choose one]* an underground storage tank or an unapproved and abandoned septic tank. The SELLER further represents and warrants that SELLER has full authority to enter into this Agreement. The buyer is not relying upon any representation, verbal or written, from any real estate broker or licensee concerning legal use. Any reference to the category (single family, multi-family, residential, commercial) or the use of this property in any advertisement or listing sheet, including the number of units, number of rooms or other classification is not a representation concerning legal use or compliance with zoning by-laws, building code, sanitary code or other public or private restrictions by the broker. The BUYER understands that if this information is important to BUYER, it is the duty of the BUYER to seek advice from an attorney or written confirmation from the municipality. In addition, the BUYER acknowledges that there are no warranties or representations made by the SELLER or any broker on which BUYER relies in making this Offer, except those previously made in writing and the following:

NONE _____

_____

_____

_____

_____

_____

*[If none, state "none"; if any listed, indicate by whom the warranty or representation was made.]*

21. **Notices.** All notices required or permitted to be made under this Agreement shall be in writing and delivered in hand, sent by certified mail, return receipt requested or sent by United States Postal Service overnight Express Mail or other overnight delivery service, addressed to the BUYER or SELLER or their authorized representative at the address set forth in this paragraph. Such notice shall be deemed to have been given upon delivery or, if sent by certified mail on the date of delivery set forth in the receipt or in the absence of a receipt three business days after deposited or, if sent by overnight mail or delivery, the next business day after deposit with the overnight mail or delivery service, whether or not a signature is required. Acceptance of any notice, whether by delivery or mail, shall be sufficient if accepted or signed by a person having express or implied authority to receive same. Notice shall also be deemed adequate if given in any other form permitted by law. *[If there are multiple buyers, identify the mailing address of each buyer in paragraph 23.]*

| BUYER: | Alex Russo | SELLER: | Bradley S Bartlett |
|---|---|---|---|
| | Laura Russo | | Deborah L Bartlett |
| | | | |
| Address: | 185 Puritan Road | Address: | 1 Long Swamp Rd |
| | Bourne, MA  02532 | | Bourne, MA  02532 |

22. **Counterparts / Electronic Delivery / Construction Of Agreement.** This Agreement may be executed in counterparts. All documents related to this transaction may be delivered electronically, including by encrypted email or facsimile, and shall have the same effect as delivery of an original. This Agreement shall be construed as a Massachusetts contract; is to take effect as a sealed instrument; sets forth the entire agreement between the parties; is binding upon

6

| *AR* | *LR* | | *BSB* | *DLB* | |
|---|---|---|---|---|---|
| BUYER'S Initials | BUYER'S Initials | BUYER'S Initials | SELLER'S Initials | SELLER'S Initials | SELLER'S Initials |

**MASSFORMS™**
Statewide Standard Real Estate Forms
©1999, 2000, 2002, 2006, 2007, 2008, 2010, 2012 MASSACHUSETTS ASSOCIATION OF REALTORS®



Form No. 503

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026  www.zipLogix.com        1 Long Swamp

and is intended to benefit the BUYER and SELLER and each of their respective heirs, devisees, executors, administrators, successors and assigns; and may be canceled, modified or amended only by a written agreement executed by both the SELLER and the BUYER. If two or more persons are named as BUYER their obligations are joint and several. If the SELLER or BUYER is a trust, corporation, limited liability company or entity whose representative executes this Agreement in a representative or fiduciary capacity, only the principal or the trust or estate represented shall be bound, and neither the trustee, officer, shareholder or beneficiary shall be personally liable for any obligation, express or implied. The captions and any notes are used only as a matter of convenience and are not to be considered a part of this Agreement and are not to be used in determining the intent of the parties. Any matter or practice which has not been addressed in this agreement and which is the subject of a Title Standard or Practice of the Real Estate Bar Association for Massachusetts, formerly known as the Massachusetts Conveyancers Association, at the time of performance shall be governed by the Standard of Practice of the Massachusetts Real Estate Bar for Massachusetts.

### 23. Additional Provisions.

1) Short Sale. All terms of sale are subject to lender approval  2) Seller cannot contribute to any costs of inspections, repairs, real estate commissions over and above that approved by

the lender, or any other costs or fees that may arise during the sale process 3)Par. 19 is amended to read BUYER

shall be responsible for smoke detector/CO2 inspection or any required repairs for compliance. 4) Buyer has a

10-day opportunity to conduct a home inspection and acknowledges that property will be sold in "as-is"

condition. 5) Buyer agent commission shall be 2% per mls and listing agreement.

See Addendum "B" property transfer lead paint notification

See Rider to P&S

UPON SIGNING, THIS DOCUMENT WILL BECOME A LEGALLY BINDING AGREEMENT. IF NOT UNDERSTOOD, SEEK ADVICE FROM AN ATTORNEY.

| *Alex Russo* | 03/13/2019 04:29 PM EDT | *Bradley S Bartlett* | 03/13/2019 04:44 PM EDT |
|---|---|---|---|
| BUYER **Alex Russo** | Date | SELLER **Bradley S Bartlett** | Date |
| *Laura Russo* | 03/13/2019 04:33 PM EDT | *Deborah L Bartlett* | 03/14/2019 07:14 AM EDT |
| BUYER **Laura Russo** | Date | SELLER, *or spouse* **Deborah L Bartlett** | Date |
| BUYER | Date | SELLER, *or spouse* | Date |

**Escrow Agent.** By signing below, the escrow agent agrees to perform in accordance with paragraph 4, but does not otherwise become a party to this Agreement.

ESCROW AGENT or representative     Date

7

| *AR* | *LR* | *BSB* | *DLB* |
|---|---|---|---|
| BUYER'S Initials | BUYER'S Initials | BUYER'S Initials | SELLER'S Initials | SELLER'S Initials | SELLER'S Initials |

**MASSFORMS**™
Statewide Standard Real Estate Forms
©1999, 2000, 2002, 2006, 2007, 2008, 2010, 2012 MASSACHUSETTS ASSOCIATION OF REALTORS®



Form No. 503

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026  www.zipLogix.com     1 Long Swamp

Scanned by CamScanner

RIDER TO PURCHASE AND SALE AGREEMENT
PROPERTY ADDRESS: 1 LONG SWAMP ROAD, BOURNE, MA 02532

### BRADLEY S. BARTLETT AND DEBORAH L. BARTLETT
("SELLER")

and

### ALEX RUSSO AND LAURA RUSSO
("BUYER")

1.    From and after the date of this Agreement, SELLER agrees to permit BUYER and its designees, including but not limited to prospective mortgage lenders (and their agents), contractors, architects and insurance agents, reasonable access, at reasonable times, to the said Premises for the purpose of making measurements, inspections, and the like.  Said right of access shall be exercised only in the presence of SELLER, or the Broker named herein, and only after reasonable prior notice, either written or oral, to the SELLER.  In any event, it being agreed that Twenty-Four (24) hours in advance shall be deemed to be "reasonable prior notice" pursuant to this Paragraph.

2.    BUYER acknowledges that the SELLER and the Brokers have complied with the requirements of Massachusetts General Laws Chapter 111, as amended, relative to the possible presence of lead paint in the Premises, including the provisions of Section 197A of Chapter 111.  BUYERS acknowledge having been verbally informed of the possible presence of dangerous levels of lead in the Premises and of the provisions of the Lead Paint Statute, so called (M.G.L. Chapter 111, Sections 190 - 199A), and the regulations promulgated there under, and acknowledge receipt from SELLER and/or SELLER's agents, of a Commonwealth of Massachusetts, Department of Health Property Transfer Notification Certification, and further acknowledges being informed by SELLER and/or SELLER's agents about the availability of inspections for dangerous levels of lead.  BUYER further acknowledges that SELLER has allowed BUYER ten (10) days to conduct inspections to determine whether lead is present on the Premises.  The provisions of this Paragraph shall survive delivery of the Deed hereunder.

3.    BUYER warrants and represents to SELLER and SELLER represents and warrants to BUYER that neither has dealt with any broker or other person entitled to a broker's commission in connection with the negotiation or execution of this Agreement or the consummation of the transaction contemplated hereby except the Broker(s) listed herein and each agrees to hold the other harmless and indemnify the other against all damages, claims, losses and liabilities, including legal fees, incurred by the other, arising out of or resulting from the failure of its representation and warranty.  The provisions of this Paragraph shall survive delivery of the Deed hereunder.

4.    SELLER shall execute and deliver simultaneously with the delivery of the deed, and when required shall on oath swear to the truth of the matters therein set forth, such documents as may reasonably be required by BUYER's lender or BUYER's attorney or the title insurance company insuring the Premises for BUYER, including without limiting the generality of the foregoing, certifications, or affidavits with respect to:  (a)  that there are no persons or parties in possession of the Premises;  (b)  that there are no facts or conditions which may give rise to mechanic's or materialmen's liens;  (c)  an affidavit pursuant to Section 1445 of the Internal Revenue Code;  (d)  the true purchase price of the Premises and that the SELLER does not intend to lend to the BUYER a portion thereof;  (e)  urea formaldehyde foam insulation ("UFFI") Disclosure Affidavit stating that to the best of SELLER's knowledge there is none; and  (f)  1099 reporting form.

5.    Between the date of the signing of this Agreement and the Closing, SELLER shall maintain and/or service the Premises and its appurtenances at the same level of effort and expense as the SELLER has maintained and/or serviced the Premises for the SELLER's own account prior to the date of this Agreement and without any deferral of maintenance or repairs, including maintaining and landscaping the grounds and lawn, clearing of all ice and snow from all walkways and driveways, and winterizing the sprinkler system, if any.  All utility systems and appliances shall be in the same working order at the time of delivery of the deed as at the time of BUYER'S inspection of the premises.

6.      At the Closing, SELLER shall be deemed to have assigned to BUYER (non-recourse to SELLER), if assignable at no additional cost to SELLER, any and all service contracts, warranties and/or guarantees, if any, covering any and all systems, fixtures, equipment and appliances as well as those covering any termite or other pest treatments in connection with the Premises.  SELLER will also provide BUYER, at Closing, with all keys, access cards, security codes, automatic garage door openers and with all manuals and other information in SELLER's possession and/or control regarding the Premises and regarding any and all systems, fixtures, equipment and appliances used in connection with the Premises.  The provisions of this Paragraph shall survive delivery of the Deed hereunder.

7.      Paragraph ten (10) of the Purchase & Sale Agreement shall be construed to apply to matters affecting title, the physical condition of the Premises and compliance of the Premises with municipal, county, state or federal codes, ordinances, statutes or regulations concerning the Premises and to which the Premises are subject under the terms of this Agreement.  Said paragraph shall not, however, be construed to excuse SELLER from vacating the Premises at the time set for Closing for reasons such as intentional incompletion of any inspection issues, unavailability of movers, inconvenience or other such delays in performance hereunder. In the event the date set for the Closing is extended pursuant to said paragraph, then such extension shall be for as short a time as is required to effect any necessary cure to the title or conditions of the Premises and with enough notice for BUYER's lender to be ready to close and, unless waived by BUYER in writing, shall in no event extend beyond the expiration date of BUYER's mortgage commitment or, if expiring earlier, BUYER's mortgage interest rate lock.

8.      In the event any apportionment/adjustment or mathematical error are within ninety (90) days subsequent to the Closing, found to be erroneous, then either Party hereto who is entitled to additional monies shall invoice (along with reasonably detailed back-up data) the other Party for such additional amounts as may be owing, and such amounts shall be paid, with good funds, within ten (10) days from the date of the invoice.  The provisions of this Paragraph shall survive delivery of the Deed hereunder for ninety (90) days.

9.      BUYER shall not be required to accept a deed signed under a power of attorney.  At the sole option of the BUYER, a Deed executed for the SELLER pursuant to a power of attorney shall not satisfy the title requirements of the Agreement.

10.     SELLER warrants and represents that SELLER is not a "*foreign person*" as defined in Section 1445 of the Internal Revenue Code of 1986, as amended("I.R.C."), and agrees to deliver to BUYER, at or before the Closing, an executed "non-foreign" affidavit in compliance with I.R.C. Section 1445(b)(2) and the regulations thereunder, evidencing the foregoing warranty and representation.

11.     By executing this Agreement and in order to facilitate the execution and delivery of certain documents contemplated hereby, the BUYER and SELLER grant to their respective attorneys the actual authority to execute and deliver on each respective party's behalf any:  (a) agreement modifying the time for the performance of any event hereunder, and/or (b) any notice that may be given under this Agreement, and the Parties may rely upon the signature of each such attorney unless they have actual knowledge that a party has disclaimed the authority granted herein.  Further, for purposes of this Agreement, email transmissions, electronic, digital and/or facsimile signatures of such written instruments shall be binding.

12.     In the event this Agreement contains any provision that the BUYER shall accept the title of the SELLER subject to easements and restrictions of record, if any, then such acceptance of title subject to easements and restrictions shall be limited to those of record, if any, insofar as they may be in force and effect, which do not adversely affect the Premises for use as a single family dwelling by the BUYER and which:  (a) give no rights to anyone to enter upon, cross or use any portion of the Premises other than standard utility easements; (b) have been duly satisfied of record at or prior to the Closing in the event consent(s) or approvals are needed; and (c) have been duly complied with of record (without limitation, a certificate of compliance) at or prior to the Closing in the event any order of condition or any other state, county, or municipal (or any subdivisions thereof) requirements in connection with the Premises.

13.     Any title matter or practice matter arising under or relating to this Agreement which is the subject of a title or practice standard of the Massachusetts Real Estate Bar Association ("REBA") shall be governed by said title or practice standard to the extent applicable, and to the extent such title standard or practice standard does not contradict Massachusetts case law and/or any expressed term or condition of this Agreement.

14.     Without limitation of any other provisions of this Agreement, said Premises shall not be considered to be in compliance with the provisions of this Agreement with respect to title unless:

(a)     All buildings, structures and improvements on the Premises, including, but not limited to, any driveway(s), garage(s), cesspool(s), well(s), septic system(s), leaching field(s), fence(s), shed(s) and all other improvements intended to be included in the sale and all means of access to and egress from the Premises shall be wholly within the lot lines of the Premises and shall not encroach upon, over or under any property not within such lot lines or property of any other person or entity;

(b)     No building, structure, improvement, including, but not limited to, any driveway(s), garage(s), cesspool(s), well(s), septic system(s), leaching field(s), fence(s), shed(s), way(s) or property of any kind encroaches upon, over or under the Premises from other premises;

(c)     Title to the Premises is insurable, for the benefit of the BUYER, by a title insurance company reasonably acceptable to BUYER, in a fee owner's policy of title insurance, at normal premium rates, on the American Land Title Association form currently in use, subject only to the exceptions permitted under paragraph four (4) of this Agreement and those printed exceptions to title normally included in the "jacket" to such form or policy requiring no indemnification documents to be signed by SELLER;

(d)     The Premises abut and have vehicular and pedestrian access to a public way, duly laid out or accepted as such by the town or city in which the Premises are located and the Premises and all buildings and improvements thereon have unrestricted and unencumbered vehicular and pedestrian access to such public way;

(e)     Complete Certificates of Compliance for any outstanding Orders of Conditions have been recorded or delivered for recording prior to the Closing;

(f)     BUYER's survey or mortgage plot plan indicates that no structure or improvements situated upon the Premises violates said zoning ordinances or by-laws or provisions of M.G.L. chapter 40A, unless such structures or improvements are validly nonconforming in accordance with said ordinances, by-laws and general laws;

(g)     If the Premises is subject to the benefit and obligations of a homeowner's association, the SELLER shall deliver to BUYER prior to Closing in recordable form, a certification from the association that all outstanding fees, charges and other monetary obligations have been paid in full.  If there is of record a covenant which grants to a third party the right to approve structures on the Premises, the SELLER shall deliver to the BUYER prior to Closing in recordable form, a certification from the benefitted party that all structures have been approved and built in accordance with the covenant.  In the alternative, if no such structures have been built within six years prior to Closing, SELLER shall deliver to BUYER such documentation as BUYER's attorney deems reasonably suitable as evidence of the same; and

(h)   All existing utilities servicing the Premises are provided directly from a public street or private way, or via validly recorded easement with perpetual right of use; and

(i)     The Premises is equipped with all necessary utilities, including, without limitation, electric, water, public sewer or private legally conforming on-site subsurface wastewater disposal system, telephone, cable and natural gas;

(j)     the Premises are not located within a so-called "Flood Plain Area" or "Flood Plain Zone" or any other such flood-prone area as determined under the rules and procedures of the Federal Flood Plain Insurance Program which would require BUYER to purchase flood insurance; and

It is agreed that in the event of a title matter for which a title insurance company is willing to issue a so-called "clean" policy or provide "affirmative coverage" over a known defect or problem, BUYER may elect to accept same but shall not be required to do so, and shall have the right, at the option of their counsel, to deem title to the Premises unacceptable or unmarketable and to terminate this Agreement.

15.    The SELLER represents to the best of SELLER's knowledge and belief that the following information is true and accurate as of the date of this Agreement and shall remain true and accurate as of the date of Closing:

(a)    there are no underground oil storage tanks or related apparatus (including piping) for fuel oil, waste oil or other petroleum products located on or under the Premises and the SELLER has not removed such tanks or apparatus from the Premises and has no knowledge of any releases into the soil from any such tanks or apparatus;

(b)    other than reasonable quantities of normal household products, there has been no release of any toxic or hazardous substances (as same is contemplated by MGL Ch 21E) and no such toxic or hazardous substances have been used, released, generated, stored, treated, disposed of, or otherwise deposited, in, on, about or from the Premises, including without limitation oil, asbestos and/or chlordane;

(c)    SELLER has complete and unencumbered ownership of all fixtures, fittings and equipment located in the Premises;

(d)    there is no pending bankruptcy, mortgage foreclosure, or other proceeding which might in any material way impact adversely on SELLER's ability to perform under this Agreement. **In the event that SELLER files for bankruptcy, or if involuntary proceedings are instituted against SELLER, BUYER may, at BUYER's election, terminate this Agreement by written notice to the SELLER whereupon** any payments made under this Agreement shall be forthwith refunded to the BUYER and all other obligations of the Parties hereto shall cease and this Agreement shall be void without recourse to the Parties hereto. **BUYER is aware that the SELLER is seeking a short sale and the sale is subject to 3rd party approval**;

(e)    SELLER is not aware of any suits, actions, orders, decrees, claims, writs, injunctions or proceedings pending or threatened against the SELLER or affecting all or any part of the Premises or the operation thereof before any court or administrative agency or officer which, if adversely determined, would have material adverse effect upon the Premises and there are no Parties with a right of first refusal or other contractual right to purchase the Premises;

(f)    any improvements, installations and additions to the Premises during SELLER's ownership have been performed in compliance with all applicable laws, ordinances and regulations;

(g)    as of the date hereof, the SELLER has received no notice from any municipal, county, state or federal agency asserting or alleging that the Premises are or may be in violation of the provisions of any municipal, county, state or federal codes, ordinances, statutes or regulations relating to zoning, building, environmental or health matters or enforcement proceedings, which representation shall be deemed to have been repeated at the time and by virtue of delivery of the deed;

(h)    SELLER has received no notice of eminent domain taking, condemnation, betterment or assessment, actual or proposed, with respect to the Premises, and SELLER represents that SELLER has no knowledge of any municipal betterments affecting the Premises approved, pending, proposed or contemplated by the Town of Saugus, MA which is likely to result in an assessment against the Premises;

(i)    there are no rights or obligations affecting the Premises, which would entitle any entity to payment of a portion of the proceeds of either this transaction or any future conveyance of the Premises (except the broker's commission and excise tax);

(j)      SELLER has no knowledge of the occurrence of any substantial damage to the Premises by fire, vandalism, or other casualty (whether or not insured against, and whether or not previously repaired or restored) and there has been no such substantial damage to the Premises during SELLER's ownership of the Premises;

(k)      in the time SELLER has owned the Premises, the basement has never had seepage of water in it and has never flooded;

(l)      that at the time of the Closing, there will be no contracts, oral or in writing, involving the Premises which will be binding upon BUYER or affect the Premises in any manner which cannot be unilaterally terminated by BUYER after Closing;

(m)      the SELLER has not been required to purchase flood insurance.

Except as otherwise herein provided, the representations and warranties contained in this Agreement refer to the date of execution of this Agreement.  SELLER will promptly notify BUYER of any change in facts, which SELLER becomes aware of, which arise prior to the Closing which would make any such representation or warranty untrue if such state of facts had existed on the date of execution of this Agreement ("SELLER Notice") and unless SELLER shall rectify the cause of such change by the original or extended time for Closing hereunder, BUYER shall have the option of canceling this Agreement by notifying the SELLER thereof in writing in which event all deposits made by the BUYER hereunder, together with the accrued interest, shall be forthwith refunded to BUYER and this Agreement shall be null and void and without recourse to the Parties hereto.

16.      The Parties acknowledge and agree that this Agreement may be signed in counterparts, and for purposes of this Agreement, email transmissions, electronic, digital and/or facsimile signatures shall be construed as original, except as to the Deed and the Closing documents and except as to documents intended to be recorded, provided however that no party shall avoid any obligation hereunder by failing to provide such original signature.

17.      SELLER represents that with respect to any work SELLER has caused to be undertaken at the Premises, such work was performed pursuant to building permits, if so required by the Town of Bourne, MA, with said permit(s) having received final sign-off and closure by the Building Inspector of the Town of Bourne, MA ("Inspector") and that SELLER has no knowledge of any "open" building permits.  In the event that there are any such "open" building permits, then SELLER shall obtain a final sign off by the Inspector for said "open" building permits.  In the event SELLER has caused work to be done to the Premises without obtaining the requisite permits, then SELLER shall obtain a final sign off by the Inspector for said work.

18.      In the event that any deadline or date for performance or providing notice contained herein (including, without limitation, any contingencies or extensions of the time for performance under this Agreement), falls on a Saturday, Sunday or legal holiday, as the case may be, such deadline or other date shall be automatically extended to the immediately following business day.

19.      The SELLER agrees to provide the closing attorney with payoffs from all lenders and appropriate documentation of the Short Sale Approval.

20.      SELLER warrants that SELLER has the legal right, power and authority to enter into this Agreement and to perform all of its obligations hereunder.

21.      Pursuant to the so-called "Integrated Disclosure Rule" ("TRID") issued by the Federal Consumer Finance Protection Bureau ("CFPB") regulations, lenders/Creditors are required to deliver all final figures and the Closing Disclosure form to the BUYER/Consumer at least three (3) business days prior to the Closing/Consummation.  As a result, the Parties and their respective real estate brokers/agents, and/or their respective counsel, agree that they must provide the lender/Creditor's closing agent with all final figures, readings, adjustments and the like as specified in this Agreement (such as water, sewer, real estate taxes, oil in tank, HOA fees, etc.), at least ten (10) days prior to

Closing/Consummation.  If the BUYER's lender/Creditor is required to give the BUYER new disclosures in accordance with the CFPB regulations or any other such regulation which will require extension of the date for the time of performance contained herein, the SELLER hereby agrees to extend said Closing/Consummation date so that the BUYER's lender/Creditor is in compliance with the CFPB, any such other regulation, and the time periods as required thereunder, without prejudice to the BUYER or the BUYER's deposit.  No claim, counterclaim or cause of action for any loss or damage resulting from an extension hereunder, shall be initiated or maintained by SELLER against BUYER or by BUYER against SELLER, unless caused by breach of the terms of this paragraph.

22.     The closing attorney shall use its best reasonable efforts to record the appropriate closing documentation at the Registry of Deeds on the Closing date.  The Parties understand, however, that depending on the time and location of the Closing, the documents may not be recorded until the following business day.  If this occurs, BUYER shall not be considered to be in default with the terms of this Agreement.

23.     Both BUYER and SELLER hereby acknowledge that they have been offered the opportunity to seek and confer with qualified legal counsel of their choice prior to signing this Agreement.  It is acknowledged and presumed that the substance and form of this Agreement have been fully reviewed by the Parties hereto and approved as to form by their respective legal counsel.  It is further acknowledged and agreed that no presumption shall exist against either party hereto by virtue of this Agreement or any portion hereof being considered to have been drafted by legal counsel for either party hereto.

24.     Marital Status of SELLER (The Massachusetts Homestead Act):

Is SELLER married or does the SELLER have a partner in a civil union (please check appropriate line):

Yes ___
No ___

If the SELLER is married or has a partner in a civil union, the name of spouse/partner is: _____

In the event that SELLER is married, the SELLER'S spouse shall execute this Agreement and, by execution of this Agreement, herein agrees to execute the subject deed to BUYER.

In the event that SELLER is unmarried, by execution of this Agreement, the SELLER hereby warrants and represents that the SELLER is not married and has no former spouse, partner or former partner in a civil union who occupies or intends to occupy the Premises as his/her principal residence or is entitled to claim the benefit of an existing estate of homestead in the property by court order or otherwise.  The SELLER herein shall also execute an Affidavit of Marital Status at Closing evidencing same.  Additionally, in the event that the SELLER'S marital status changes or the SELLER expects his/her marital status may change prior to Closing, the SELLER herein agrees to notify the BUYER and BUYER'S attorney at least seven (7) business days prior to the date set for Closing.

25.     If the Premises are serviced by an on-site subsurface wastewater disposal system (the "System") regulated by Title V of the Massachusetts State Environmental Code ("Title V"), BUYER's obligations under this Agreement, are conditioned upon SELLER providing to BUYER, at least five (5) business days prior to Closing, with an inspection report and certification by a person licensed and authorized to perform inspections of such Systems (the "System Inspector"), in the form prescribed by the Massachusetts Department of Environmental Protection (which inspection report and certification shall be approved by the local Board of Health) stating that the System Inspector has not found any information which indicates that the System fails to adequately protect public health or the environment as defined in Title V and that the System "passes" and is adequate for _____ bedrooms.

26.     The BUYER and SELLER acknowledge that they have been informed that the BUYER's attorney, Stephen J. Delamere, Esq. may be asked to provide legal services on behalf of the mortgage lender for the mortgage loan closing, in addition to the representation of the BUYER in this transaction, and that BUYER and

SELLER have no objections to and consent to this dual representation of BUYER and Lender by Buyer's attorney.

*Bradley S Bartlett*                    03/13/2019
                                        04:45 PM EDT

SELLER: Bradley S. Bartlett

*Laura Russo*                           03/13/2019
                                        04:33 PM EDT

BUYER: Laura Russo

*Deborah L Bartlett*                    03/14/2019
                                        07:15 AM EDT

SELLER: BUYER: Deborah L. Bartlett

*Alex Russo*                            03/13/2019
                                        04:30 PM EDT

BUYER: Alex Russo



**Bank**

America's Most Convenient Bank®

April 3rd, 2019

Bradley J. Bartlett
PO BOX 1083
Sagamore Beach, MA 02562-1083

**RE:      Account Ending In: 3620**
Property Address: 1 Long Swamp Road, Bourne MA 02532
Promissory Note in original principal amount of or up to $180,000.00 dated April 26th, 2007
CERT: 7018 1130 000 8046 7514

Dear Bradley J. Bartlett,

### Terms of Approval for Short Sale and of Deficiency After Short Sale

You are hereby notified that TD Bank, N.A. formerly known as TD Banknorth, N.A. has granted approval for the so-called "short sale" of the property located at 1 Long Swamp Road, Bourne MA 02532 upon the terms and conditions as set forth in the attached Short Sale and Affirmation of Debt Agreement. Please note that, unless extended in writing by the Bank, the proposed sale or other conveyance of the Property must occur by no later than June 3rd, 2019.  If such proposed sale or other conveyance does not occur by such date, the Bank shall have no obligation to release the Mortgage.

In reliance upon and after receiving and accepting a fully executed copy of the Agreement and the HUD-1 Settlement Sheet, and confirming that all of the terms and conditions in the Agreement have been abided by, including the Bank's receipt of the "Required Proceeds" identified in the Agreement, the Bank will release the Mortgage on the Property.

**Please be advised that the deficiency balance will be waived.**

☐ We have enclosed a copy of the valuation that was used to review your account.

☐ The valuation requested for this review was not available at the time of this approval and will be sent when it becomes available.

☒ There was no valuation used in this review

### We're here for you.

If you have any questions or you would like to discuss further, please call us at **1-800-742-2651,** Monday through Friday, 8am-5pm or write us at TD Bank, PO Box 9547, Portland, ME 04112-9547. We look forward to working with you through this process.

### We are committed to getting things right.

If you think there's an error, would like to send a request for information, or have a credit bureau dispute related to your mortgage or home equity, write us at **TD Bank, Operations Center, P.O.**

CAP 47772 (04/18)                                                                                    EXHIBIT B

**Box 218, Lewiston, ME 04243**. Include your name, property address, account number or other identifying information, and description of error or request for information, as well as why you believe there is an error.

Sincerely,



Benny Watson
Loss Mitigation Specialist
Benjamin.Watson@TD.com
1-800-742-2651 ext: 8953

Enclosure


This communication is an attempt to collect a debt; any information obtained will be used for that purpose. However, if the debt is in active bankruptcy or has been discharged through bankruptcy, this communication is not intended as and does not constitute an attempt to collect a debt.

If any recipient hereof is represented by an attorney in connection with the above-referenced account, or in connection with any bankruptcy proceeding, please provide such attorney a copy of this letter and any enclosures.



## SHORT SALE AGREEMENT

TD Bank, N.A. (the "Bank"), a national banking association lawfully organized and authorized to conduct business within the State of Massachussetts, having a principal place of business at 70 Gray Road, Falmouth, Maine 04105, and Bradley J. Bartlett of 1 Long Swamp Road, Bourne MA 02532 (individually, and, if more than one person, collectively, "the Borrower") hereby agree as follows:

1. On April 26th, 2007, the Borrower executed and delivered a promissory note in favor of the Bank (or its predecessor or assignor) in the original principal amount of or up to $180,000.00 (the "Note").

2. The Bank has calculated that the amounts due under the Note as of April 3rd, 2019 are as follows:

| Principal Balance | $179,943.28 |
|---|---|
| Interest: | $0.00 |
| Late Charges | $19,481.17 |
| Escrow | $N/A |
| Fees | $0.00 |
| **TOTAL** | **$199,424.45** |

3. As security for the Note, the Borrower granted to the Bank a mortgage on certain property located at 1 Long Swamp Road, Bourne MA 02532 (the "Property"), which mortgage is recorded with the Barnstable County Registry of Deeds (the "Mortgage").

4. The Bank is the current holder of the Note and the Mortgage.

5. The Borrower wishes to sell or otherwise convey the Property for a gross sale price of $360,000.00. The Bank is in a junior lien position. Proceeds in the amount of $9,272.52 will be allocated to TD Bank which is less than the outstanding amounts due under the Note. The Borrower wishes, nonetheless, to obtain from the Bank a release of the Mortgage on the Property in order to facilitate that sale and conveyance.

6. The Bank is willing to accommodate the Borrower in releasing the Mortgage, provided that the Borrower otherwise fully abides by all of the terms and conditions of this Agreement.

7. The Bank and Borrower, in consideration of the mutual promises set forth herein, and for other good consideration, the sufficiency of which is acknowledged, and in reliance on all other existing agreements and documents between the Borrower and the Bank heretofore executed, all of which are incorporated herein by reference and made a part hereof, now hereby agree as follows:



A. The Bank will release the Mortgage upon and subject to the terms and conditions of this Agreement being fully abided by and upon its receipt of net proceeds from the sale or conveyance of the Property of not less than $9,272.52 (the "Required Proceeds"). Unless extended in writing by the Bank, the proposed sale or other conveyance of the Property must occur by no later than June 3rd, 2019. If such proposed sale or other conveyance does not occur by such date, the Bank shall have no obligation to release the Mortgage. Upon application of the required proceeds to the total amount due under the note, the borrower understands and agrees a deficiency balance will exist. As of today's date the estimated deficiency is $190,151.93 (the "Deficiency")  The deficiency, will be determined on the date of sale.

B. Prior to the closing on the sale or other conveyance of the Property, the Bank must have received and have approved the final HUD-1 settlement sheet associated with the sale or conveyance of the Property, setting out the proposed payments to be made through such sale or conveyance.

C. Within seven (7) days after the closing, the Bank must receive from the Borrower a fully executed copy of the final HUD-1 settlement statement.

D. The Borrower acknowledges that all funds currently held by the Bank in any and all escrow, suspense or other reserve accounts, and all anticipated insurance refunds relating to the Note or Mortgage shall be forfeited and shall be applied to the Deficiency upon the release of the Mortgage by the Bank.

E. Upon receipt of the required funds referenced in paragraph A The Bank will release the lien. The remaining Deficiency referenced in paragraphs A and E will be waived, the account will be coded as "Settled for Less than the Full Amount" for credit reporting purposes and a 1099c will be issued as required by State and Local law.

F. No delay or failure by the Bank in the exercise of any right or remedy under the Note shall constitute a waiver thereof, and no single or partial exercise by the Bank of any right or remedy under the Note shall preclude other or further exercise thereof or the exercise of any other right or remedy.

G. This Short Sale and Affirmation of Debt Agreement shall not serve to waive, modify or alter in any way the Bank's rights in law and in equity to enforce the terms and conditions of the Note, Mortgage, any other loan documents, or any other agreement relating to the Note, except as specifically and expressly provided herein.


Executed this _____Day of_____201_


**READ, UNDERSTOOD AND AGREED TO:**


_____

Bradley J. Bartlett                                                          Date

CAP 49583 (08/18)

**TD Bank**
America's Most Convenient Bank®

_____     Date

_____

TD Bank, N.A.,

By: _____

Name: _____

Title: _____

UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS

RE:                                              Case No. 19-10061-JNF

Bradley J. Barlett                               Chapter 13
Deborah L. Bartlett
                    Debtors

## ORDER ON DEBTORS' MOTION FOR LEAVE TO SELL 1 LONG SWAMP ROAD, BOURNE, MA 02532 FREE AND CLEAR OF ALL LIENS, CLAIMS AND ENCUMBRANCES

WHEREAS the Debtors filed an expedited motion for leave to sell the real property at 1 Long Swamp Road, Bourne, MA 02532 ("REAL PROPERTY"); and

WHEREAS after notice and opportunity for hearing, no interested party filed an objection to Debtor's Motion to Sell; and

WHEREAS no party made a counteroffers or higher bid;

WHEREAS good cause appears for allowing the motion; and

WHEREAS the Debtor agreed to provide the Chapter 13 Trustee with a copy of the closing statement within ten days of closing;

NOW THEREFORE it is ordered that:

1. Expedited treatement of the motion is allowed;

2. Pursuant to 11 U.S.C. 363(m), the buyer entered the transaction in good faith and the 14-day stay of this order is waived;

3. the motion is allowed and the REAL PROPERTY may be sold to Alex Russo and Laura Russo;

4. The Debtor shall within 14 days of the closing provide the Chapter 13 Trustee with a copy of the settlement statement and amend the Chapter 13 Plan.


Dated: _____                    _____
                                    Honorable Joan F. Feeney

Through this Notice, higher offers for the Property are hereby solicited.  Any higher offer must be accompanied by a cash deposit of $____1,000.00____ in the form of a certified or bank check made payable to the undersigned.  Higher offers must be on the same terms and conditions provided in the Purchase and Sale Agreement, other than the purchase price.

**HEARING:**  A hearing on the Motion to Approve Sale, objection or higher offers is scheduled to take place on _____ at _____  AM/PM before the Honorable ____Joan N. Feeney_, United States Bankruptcy Judge, ___Courtroom_____.  Any party who has filed an objection or higher offer is expected to be present at the hearing, failing which the objection may be overruled or the higher offer stricken.  The Court may take evidence at any hearing on approval of the sale to resolve issues of fact.  If no objection to the Motion to Approve Sale or higher offer is timely filed, the Court, in its discretion, may cancel the scheduled hearing and approve the sale without a hearing.

At the hearing on the sale the Court may 1.) Consider any requests to strike a higher offer, 2.) Determine further terms and conditions of the sale, 3.) Determine the requirements for further competitive bidding, and 4.) Require one or more rounds of sealed or open bids from the original offeror and any other qualifying offeror.

**DEPOSIT:**  The deposit will be forfeited to the estate if the successful purchaser fails to complete the sale by the date ordered by the Court.  If the sale is not completed by the buyer approved by the Court, the Court, without further hearing, may approve the sale of the Property to the next highest bidder.

Any questions concerning the intended sale shall be addressed to the undersigned.

Respectfully submitted,
Through Counsel,

Dated:  April 8, 2019

_/s/ Thomas C. Benner_
Thomas C. Benner, Esq.
Benner & Weinkauf, P.C.
33 Samoset Street
Plymouth, MA  02360
(508) 746-8030
BBO# 655483
tbenner@tbennerlaw.com

CERTIFICATE OF SERVICE

I, Thomas C. Benner, counsel for the above-named Debtor, certify that on January 22, 2019 a true and accurate copy of the Motion to Sell Real Estate and Exhibits was served on the following parties via first class mail, postage pre-paid or electronically.

By electronic mail using Court's CM/ECF system:

John Fitzgerald, Esq., Office of the United States Trustee
Carolyn Bankowski, Esq. Chapter 13 Trustee

By regular mail, postage pre-paid:

Bradley and Deborah Bartlett
476 Route 6A
East Sandwich, MA  02537

Attached list of service recipients.

                                         */s/ Thomas C. Benner*
                                         Thomas C. Benner, Esq.
                                         Benner & Weinkauf, P.C.
                                         33 Samoset Street
                                         Plymouth, MA  02360
                                         (508) 746-8030
                                         BBO# 655484
                                         tbenner@tbennerlaw.com

Alliance One
4850 E Street Rd Ste 300
Trevose, PA  19053-6643


Alltran Financial, LP
PO Box 610
Sauk Rapids, MN  56379-0610

American Express National Bank, AENB
c/o Zwicker & Associates, P.C.
80 Minuteman Road
P.O. Box 9043
Andover, MA 01810-0943

Amex
PO Box 297871
Fort Lauderdale, FL  33329-7871


Amex Dsnb
PO Box 8218
Mason, OH  45040-8218

(p)BANK OF AMERICA
PO BOX 982238
EL PASO TX 79998-2238

Bank of America, N.A.
P O Box 982284
EL PASO, TX 79998-2284


(p)CAVALRY PORTFOLIO SERVICES LLC
500 SUMMIT LAKE DR
STE 400
VALHALLA NY 10595-2322

Capital One Bank (USA), N.A.
4515 N Santa Fe Ave
Oklahoma City, OK 73118-7901

Capital One Bank USA N
PO Box 30281
Salt Lake City, UT  84130-0281


Citibank, N.A.
c/o Northland Group
PO Box 390905
Minneapolis, MN  55439-0905

Client Services, Inc.
3451 Harry S Truman Blvd
Saint Charles, MO 63301-9816

Credit Control LLC
PO Box 546
Hazelwood, MO  63042-0546


Dsnb Macys
PO Box 8218
Mason, OH  45040-8218

Duane Morris LLP
30 S 17th St
Philadelphia, PA 19103-4196

GC Services Limited Partnership
PO Box 857
Oaks, PA  19456-0857


Gragil Associates, Inc.
PO Box 1010
Pembroke, MA  02359-1010

Great Call Inc.
PO Box 4428
Carlsbad, CA  92018-4428

IRS
PO Box 7346
Philadelphia, PA  19101-7346


Korde & Associates, P.C.
900 Chelmsford St Ste 3102
Lowell, MA 01851-8102

Lower Cape Ambulance Assoc.
PO Box 1721
Provincetown, MA  02657-5721

Massachusetts Department of Revenue
PO Box 7065
Boston, MA  02204-7065


Midland Credit Management
2365 Northside Dr Ste 300
San Diego, CA  92108-2709

NCB Management Services Inc.
PO Box 1099
Langhorne, PA  19047-6099

NES of Ohio
2479 Edison Blvd Unit A
Twinsburg, OH  44087-2476


Nationstar/Mr. Cooper
350 Highland St
Houston, TX  77009-6623

Radius
PO Box 390905
Minneapolis, MN  55439-0905

Ratchford Law Group, P.C.
409 Lackawanna Ave Ste 320
Scranton, PA 18503-2059

Shellpoint Mortgage Servicing
PO Box 10826
Greenville, SC  29603-0826

Synchrony Bank
PO Box 965064
Orlando, FL  32896-5064

Synchrony Bank
c/o PRA Receivables Management, LLC
PO Box 41021
Norfolk, VA 23541-1021


(p)TD BANKNORTH NA
70 GRAY ROAD
FALMOUTH ME 04105-2299

TD Bank, N.A.,
c/o Schiller Knapp Lefkowitz Hertzel
950 New Loudon Rd
Latham, NY 12110-2100

Town of Bourne
PO Box 862
Reading, MA  01867-0407


United Collection Bureau, Inc.
5620 Southwyck Blvd Ste 206
Toledo, OH  43614-1501

Zwicker & Associates, P.C.
200 Minuteman Rd Ste 202
Andover, MA  01810-1046

Bradley J. Bartlett
1 Long Swamp Rd
Bourne, MA 02532-2306


Deborah L. Bartlett
1 Long Swamp Rd
Bourne, MA 02532-2306